**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re JOEY MICHAEL SIMPKINS and KRISTINE ELAINE SIMPKINS, <br><br>　　　　　Debtors. | ) Case No. 05-74534-ROA <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM**

This matter comes before the court on a motion brought by the United States trustee under section 707(b) of the bankruptcy code[1] to dismiss this case for substantial abuse. Joey Simpkins and Kristine Simpkins ("the Debtors") opposes the motion.

This court has jurisdiction over this matter. 28 U.S.C. §§ 1334(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Accordingly, this court may render a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as directed by Fed. R. Bankr. P. 7052, which is made applicable in this proceeding by Fed.R.Civ.P. 52.

For the reasons stated below, the Court concludes that it would not be a substantial abuse of the provisions of chapter 7 for the Debtor to continue under this chapter. The motion will be

---

[1] Herein, "Section" refers to the given section in the bankruptcy code. The bankruptcy code is codified at 11 U.S.C. § 101 et seq.

1

denied.

## *I. Facts*

On October 8, 2005, the Debtors filed a joint chapter 7 petition. The Debtors scheduled real property valued at $120,500.00.[2] They scheduled total secured claim in the amount of $123,171.00, and general unsecured claims in the amount of $83,340.91.[3] They did not schedule any priority unsecured claims.[4]

Mr Simpkins has been employed full-time as an engineer for 13 years. Mrs. Simpkins is currently unemployed. Mr. Simpkins scheduled monthly gross income in the amount of $5,667.04 including overtime in the amount of $853.92.[5] He scheduled monthly net income of $3,281.08.[6] The net income is calculated in part by a deduction from the Debtor's gross income in the scheduled amount of $680.04 that constitutes a monthly contribution to his 401(k) retirement account.[7] The Debtor scheduled total monthly expenses in the amount of $4,239.00.[8] The Debtors have one dependent.

On January 17, 2006, the United States trustee filed a motion under 11 U.S.C. § 707(b) to dismiss this case on the grounds that granting relief would constitute substantial abuse.

## *II. Discussion*

---

[2] See Debtors' Schedule A.

[3] See Debtors' Schedules D and F.

[4] See Debtors' Schedule E.

[5] See Debtors' Schedule I.

[6] See Debtors' Schedule I.

[7] See Debtors' Schedule I.

[8] See Debtor's Schedule J.

2

A case under chapter 7 may be dismissed if (1) the debtor's debts are primarily consumer debts and (2) it would be a substantial abuse of the provisions of chapter 7 of the bankruptcy code to grant relief. 11 U.S.C. § 707(b)[9].

"There shall be a presumption in favor of granting the relief requested by the debtor." 11 U.S.C. § 707(b). The burden of proof and the burden of production in a motion to dismiss for substantial abuse clearly rests with the moving party, in this case the United States trustee. See 4 Collier on Bankruptcy, "Dismissal", ¶ 707.04[5][a], p. 707-27 (15th ed. rev.) (Citing Green v. Staples (In re Green), 934 F.2d 568 (4th Cir. 1991)). The presumption, however, is meant to be something more than a rule about the burden of proof since that burden would already have been on the party seeking to dismiss the case. Collier, supra. "Therefore, it appears that the presumption is an indication that in deciding the issue, *the court should give the benefit of any doubt to the debtor* and dismiss a case only when a substantial abuse is clearly present." 4 Collier on Bankruptcy at 707-28. (Emphasis added.)

The first issue is whether the Debtors' debts are consumer debts. Consumer debts are those "incurred by an individual primarily for a personal, family, or household purpose". 11 U.S.C. § 101(8). The Debtors do not deny that their debts are primarily consumer debts in this case.

---

[9] Section 707(b) provides:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

We turn now to the second issue, that of substantial abuse. In <u>Green</u>, the Fourth Circuit provided trial courts with guidance to determine whether granting relief to a debtor would constitute substantial abuse. In <u>Green</u>, the debtor was employed as a bus driver, a job that he had held for at least 13 years. His income exceeded his necessary expenses by $638.00 per month. He had earned $46,000.00 during 1988, but asserted that he had been out of work for six months and estimated that he would only earn $26,000.00 in 1989. The Bankruptcy Court granted the motion to dismiss the debtor's case solely on the grounds that he had disposable income. The United States District Court affirmed the decision of the Bankruptcy Court.

The Fourth Circuit Court of Appeals held that a debtor's ability to pay his or her debts when due, as determined by his ability to fund a Chapter 13 plan, does not, by itself, constitute substantial abuse. <u>Green</u>, 934 F.2d at 571-572. Rather, the Court concluded that "the determination must be made on a case-by-case basis, in light of the totality of the circumstances." <u>Green</u>, 934 F.2d at 572. The Court remanded the case to the Bankruptcy Court with instructions to consider the totality of the circumstances.

Because the Bankruptcy Court had based its decision solely on the fact that the debtor had disposable income, the Fourth Circuit Court of Appeals first addressed the degree to which a trial court should consider disposable income in rendering a decision on a motion under section 707(b).[10] The Court first held that the existence of disposable income does not, without more, constitute substantial abuse. The Court based the holding on three inquiries.

The Court first considered a *per se* rule basing dismissal solely on the existence of

---

[10] Disposable income is defined, for purposes of section 1325, which requires the debtor to pay all of his or her disposable income into the plan, as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . ." 11 U.S.C. § 1325(b)(2).

4

disposable income by looking at the Congressional history.

> The ambiguity of the statutory language is no doubt a reflection of Congress's inability to agree on a definition of substantial abuse which would encompass these countervailing considerations in all situations. Nevertheless, in unsuccessfully attempting to carve out such a definition, Congress considered and rejected the use of a threshold future income or ability to repay test (known as "mandatory Chapter 13") as a qualification for Chapter 7 relief for consumer debtors. [Footnote omitted.] *In re Deaton,* 65 B.R. 663, 665 (Bankr.S.D.Ohio 1968).

Green, 934 F.2d at 571.

The Court also rejected a *per se* rule in light of a fundamental precept of bankruptcy law. "The establishment of a future income threshold of eligibility for Chapter 7 by means of the *per se* rule we are urged to adopt would render this presumption [in favor of granting the relief requested by the debtor] toothless." Green at 573.

Finally, the Fourth Circuit considered the Bankruptcy Code and Rules as a whole and section 109[11] of the Bankruptcy Code in particular.

> Moreover, nowhere in the Code is there a requirement that a debtor be insolvent in order to file for bankruptcy. Section 109, which the 1984 Amendments left unchanged, allows any person to be a debtor under Chapter 7 unless he comes within one

---

[11] Section 109(b), which concerns whether a person is eligible to be a chapter 7 debtor, provides:

(b) A person may be a debtor under chapter 7 of this title only if such person is not--
    (1) a railroad;
    (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, a New Markets Venture Capital company as defined in section 351 of the Small Business Investment Act of 1958, a small business investment company licensed by the Small Business Administration under subsection (c) or (d) of section 301 of the Small Business Investment Act of 1958, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act, except that an uninsured State member bank, or a corporation organized under section 25A of the Federal Reserve Act, which operates, or operates as, a multilateral clearing organization pursuant to section 409 of the Federal Deposit Insurance Corporation Improvement Act of 1991 may be a debtor if a petition is filed at the direction of the Board of Governors of the Federal Reserve System; or
    (3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

5

of several limited exceptions, none of which apply to consumer debtors and none of which are predicated upon anticipated income. 11 U.S.C.A. § 109 (1979 & West Supp.1990). Section 109, taken together with the Senate report on Section 707(a) cited *infra,* provides a strong indication that Section 707(b) was intended to explicitly recognize the court's ability to dismiss a Chapter 7 petition for lack of good faith-- when "the total picture is abusive." *Waites v. Braley, supra,* 110 B.R. at 215 (quoting bankruptcy court Opinion and Order; *but see* 217, holding that neither bad faith nor fraud is an element required for a finding of substantial abuse).

Id.

The Fourth Circuit Court of Appeals also provided a non-exclusive list of five additional factors that trial courts should consider when entertaining a motion to dismiss for substantial abuse. They are:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;

(5) Whether the petition was filed in good faith;

Green, 934 F.2d at 572.

The Fourth Circuit Court of Appeals also cited three opinions that trial courts might find helpful in considering motions under section 707(b), thus providing three additional, if not distinct, factors.

(6) Whether the debtor engaged in free-wheeling spending[12];

---

[12] See In re Grant, 51 B.R. 385, 396 (Bankr. N.D.Ohio 1985) (Cited in Green, 934 F.2d at 573.)

6

(7) Whether the debtor altered monthly obligations in statements to the court at least three times[13]; and

(8) Whether the debtor chose Chapter 7 over Chapter 13 in order to voluntarily pay favored creditors[14].

Green, 934 F.2d at 573.

As with any totality-of-the-circumstances test, the analysis does not consist of an accounting, rather, each factor is considered in light of its weight and relevance in the case under consideration. A factor that is irrelevant in one case may be determinative in another.

A. The Debtor's Disposable Income.

Whether a debtor has disposable income that he or she could use to fund a chapter 13 plan is the primary factor is to be considered by a bankruptcy court when considering a motion to dismiss a case for substantial abuse. See In re Harrelson, 323 B.R. 176, 179 (W.D.Va. 2005). ("[T]he ability to repay, although not a dispositive factor, is the primary factor in determining substantial abuse.")

The amount of a debtor's disposable income is important in the context of a motion under section 707(b) because it is one of three minimum amounts a debtor must pay through a chapter 13 plan if that plan is to be confirmed.[15] Disposable income is a measure of the amount that a debtor could pay toward his or her unsecured debt if he or she chose to file a case under chapter

---

[13] See In re Peluso, 72 B.R. 732, 738 (Bankr. N.D.N.Y. 1987) (Cited in Green, 934 F.2d at 573.)

[14] See In re Shands, 63 B.R. 121, 123 (Bankr. E.D.Mich 1985) (Cited in Green, 934 F.2d at 573.)

[15] A debtor must commit all of his or her disposable income to plan payments if the plan is to be confirmed. See 11 U.S.C. § 1325(b)(1)(B). Additionally, the debtor must pay all priority claims as defined in section 507(a) in full, see 11 U.S.C. § 1322(a)(2), and must pay unsecured claims in an amount equal in an amount to what those creditors would receive if the case were a case under chapter 7 (commonly referred to as the best-interest-of-the-creditors test), see 11 U.S.C. § 1325(a)(4).

7

13. Disposable income may be defined as the difference between a debtor's net income and his net expenses.

*Gross and Net Monthly Income.* The Debtors scheduled Mr. Simpkins' gross monthly income in the amount of $5,667.04, the equivalent of $68,004.48 annually. At item #1 of their statement of financial affairs, Mr. Simpkins listed his 2003 income at $63,384.75 and his 2004 income at $76,223.00. He listed his 2005 gross income at $63,384.75 through September of 2005.

Mr. Simpkins' scheduled amounts in Schedule I are based on his two pay advices for the two-week periods ending on September 15, 2005, and September 30, 2005, the last two earnings statements issued before the Debtors filed their petition. The total gross income for those two periods is $5,667.04, the exact amount scheduled. The total net income for those two periods is $3,281.08, the exact amount scheduled. The total 401(k) deduction is $680.04, the exact amount scheduled. Mr. Simpkins explained that he believed that these amounts correctly reflected his anticipated overtime in the foreseeable future. The Debtors indicated as such on their original Schedule I which was filed with the petition. They note that "Debtor's overtime during prior months of this year has ended with no foreseeable projects that would create additional income."

The United States District Court for the Western District of Virginia has provided guidance concerning the consideration of overtime income when estimating disposable income in a hypothetical chapter 13 case. In that case, the Court held that the debtor "will apparently continue to work overtime, and although the Court should not require him to overexert himself on behalf of his creditors, neither should the Court ignore the extra income that he will doubtless

earn." McDow v. Fulcher, 2006 WL 148751 (W.D.Va.). The same standard should apply when assessing the accuracy of a debtor's schedules.

In this case, the Debtors have scheduled $853.92 per month in overtime income. This amount represents more than 21 hours per month in overtime. While Mr. Simpkins has earned more overtime income than this in the past, the Debtors indicated on their original Schedule I that they do not expect that it will continue into the future.

For purposes of this analysis, however, the Court will accept the assertions of the United States trustee in order to ascertain if there is any possibility that the Debtors could fund a chapter 13 plan. As will be seen, the Debtors could not pay even five percent of their unsecured claims if the assertions of the United States trustee are accepted as true. The United States trustee asserts that the Debtors' future income is better estimated by considering Mr. Simpkins income as reflected in his Earnings Statements[16] for the pay periods ending June 15, 2005, through October 30, 2005. Mr. Simpkins is paid twice monthly. His total gross income for the five month period was $33,210.24, or $6,642.05 per month. His net income during this time period is $18,945.57, or $3,789.10. The United States trustee also asserts that Mr. Simpkins should not be permitted to deduct his 401(k) contributions in calculating his net income, as they would not be allowed in calculating the Debtor's disposable income for the purpose of formulating a chapter 13 plan. The Court agrees with this assertion. Mr. Simpkins' total 401(k) contribution during these five months was $3,985.23, or $797.04 per month. The United States trustee reduces the reduction by 29% to offset the tax savings afforded by the 401(k) contribution, yielding $565.90. The United States trustee calculates the Debtor's net income at $4,355.00 ($3,789.10 + $565.90)

---

[16]    See Exhibit of the United States trustee #3 and #12 (summary).

per month. The Court accepts this amount for purposes of this analysis.

*Monthly Expenses.* The Debtors originally scheduled $4,239.00 in monthly expenses. In their amended Schedule J, they scheduled $4,258.00 in monthly expenses. The United States trustee objects to only one expenditure, that of $105.00 for the support of the Debtors' pets. Some minimal expense for the maintenance of pets is permitted in determining disposable income in chapter 13 cases. See In re Cohen, 246 B.R. 658 (Bankr. D.Colo.2000) (Allowing $100.00 per month for feeding and care of two dogs). Cf. In re Wyatt, 217 B.R. 585 (Bankr.D.Neb.1998). (Debtor's expenditure of $175.00 per month for the care of several horses and dogs, which were elderly and required extraordinary veterinary expenses, deemed excessive unreasonable, and not necessary for the maintenance or support of the debtor or his dependents.) The Pet expenses will be reduced by $55.00 to $50.00 for purposes of this analysis.

The United States trustee did not discuss any other expenses in either his closing or in his post-trial brief. He did however, challenge a few of the Debtors' expenses at trial. The Debtors' scheduled $800.00 per month for their mortgage, but information provided to the United States trustee indicates that they paid $780.00 for the months of June through October of 2005. Mrs. Simpkins explained that she would sometimes pay an additional $20.00 per month toward the principal. The Debtors scheduled $35.00 per month for the payment of a debt secured by a computer, but the information provided by the Debtors to the United States trustee indicate that they paid $23.00 per month for the months of June through October, 2005. Mrs. Simpkins was unable to explain this difference, but did indicate that they were behind on this debt when asked by the United States trustee. The Debtors' scheduled expenses will be reduced by $32.00 based on these two items. For purposes of this analysis, the Debtors' allowed monthly

expenses are $4,171.00 ($4,258 - [$55.00 + $20.00 +$12.00]).

*Monthly Disposable Income and the effect on a Chapter 13 Plan.* Accepting the assertions of the United States trustee regarding the Debtors' income, the Debtor's monthly disposable income for purposes of a chapter 13 plan would be $184.00 ( = $4,355.00 - $4,171.00). During the pendency of a thirty-six month chapter 13 plan, the Debtor could pay a total of $6,624.00. Of this amount the chapter 13 trustee would be paid approximately 10% or $662.00 and the Debtor's attorney would be paid approximately $2,500.00. Priority and general unsecured creditors would receive $3,462.00.00 ( = $6,624.00 - [$662.00 + $2,500.00]). The Debtor's unsecured creditors would receive less than 5% of their claims.

B. Other Green Factors to be Considered.

*(1) Financial Trauma.* The first factor other than disposable income mentioned in Green concerns whether the Debtor has experienced a financial trauma in the time leading up to the filing of the petition. Financial traumas include such things as a medical debt, an involuntary change in employment, and a change in the family structure such as a divorce or the death of a spouse. The United States District Court for the Western District of Virginia has commented on this issue thus:

> Under the first factor, the bankruptcy petition was not filed because of sudden illness, calamity, disability, or unemployment. Courts have held that this factor weighs in favor of substantial abuse when filing is not due to some "unforeseen tragedy." *In re Norris,* 225 B.R. 329, 333 (Bank.E.D.Va.1998); *see In re Vansickel,* 309 B.R. 189, 211 (Bank.E.D.Va.2004).

Harrelson, 323 B.R. at 178. In Vansickel, the Court discussed the relevance of a financial trauma in the determination of substantial abuse.

> Death, illness, unemployment and divorce are part of life's risks, part of the risks borrowers run when borrowing money and lender's run when lending money. Absent

> more, the presence of those calamities tends to favor the relief the debtor seeks. . . . The presence of a calamity is probably more important than the absence of a calamity.

<u>Vansickel</u> at 215.

In or about early 2000, a daughter was born to the Debtors. At the time Mrs. Simpkins was employed in Christiansburg, Virginia and Mr. Simpkins was employed about twenty miles away in Salem, Virginia. Consequently, Mrs. Simpkins was responsible for taking their daughter to daycare. She was also responsible for bringing her home during the day when their daughter became ill, which happened with some regularity. On two occasions when she was eight months old and again when she was eighteen months old, the daughter was hospitalized by illness contracted, in all probably, at the daycare center.

In December of 2001, the Debtors decided that Mrs. Simpkins, who was grossing about $20,000.00 per year, would resign her job. This decision was based on the cost of day care, the amount of work that she was missing, and the exposure of their daughter to illness at the daycare center.

Between April of 2002 and January of 2003, Mrs. Simpkins had six surgeries to repair a hernia that she had occurred about the time that their daughter was born. From January of 2003 through July of 2003, the Debtors placed their daughter in morning pre-school and afternoon childcare in order to relieve Mrs. Simpkins from the physical stress of lifting their daughter. After July of 2003, their daughter remained in pre-school until late 2005.

To some significant extent, the Debtors' financial problems was caused by the need for Mrs. Simpkins to take care of their daughter, and, to a lesser extent, by the added expense of pre-school and day care during her six-month recuperation from surgery. To the extent that this factor is relevant, it weighs slightly in favor of denying the motion of the United States trustee.

*(2) Excessive Credit.*  The second factor requires the court to ascertain whether the Debtor incurred cash advances and made consumer purchases *far* in excess of his or her ability to pay.

The Court in Vansickel addressed this factor.

> In considering whether a Chapter 7 debtor incurred cash advances and made consumer purchases far in excess of his or her ability to pay, under Fourth Circuit's *Green* test for determining whether a particular case constitutes "substantial abuse," court should not interpret this factor broadly, as to do so would be contrary to the Bankruptcy Code's presumption in favor of relief; instead, this factor is more properly an examination of the nature of the debt incurred and of debtor's reasonable expectations at the time that the obligations were incurred.  Bankr.Code, 11 U.S.C.A. § 707(b).

Vansickel at 211.

In Vansickel, the United States trustee argues that the debtors' Schedule F spoke for itself, that the debtors overextended their ability to meet their current obligations, and that they voluntarily incurred consumer debts beyond their ability to pay them.  The Court concluded that the United States trustee had failed to prove his assertion.

> If this factor is broadly interpreted, all debtors start out with it weighing against them.   All debtors have incurred obligations in excess of their ability to repay them.  The very fact that they filed bankruptcy is evidence of this.   Such a broad interpretation is contrary to the presumption in favor of relief contained in § 707(b).  This factor is more properly an examination of the nature of the debt incurred and of the debtor's reasonable expectations at the time that the obligations were incurred.   Did the debtor have a reasonable expectation of paying the obligation, or repaying the debt?
> Were the obligations for luxury goods or services?   Were they consistent with the debtor's financial status in the community?   Was there a sudden unexplained change in spending patterns?   These questions are directed to the fundamental purpose of § 707(b), whether the bankruptcy system is being used by a debtor "to take *unfair* advantage of his creditors."  *Green,* 934 F.2d at 570 (emphasis added).
> Here, it cannot be said that the debts were excessive.   They are, in fact, relatively modest.  Nor can it be said that the debtors did not have a reasonable expectation of repaying them when they were incurred.   It is not known over what time the debts were incurred;  whether regular payments were maintained, and if so, how long;  whether the purchases were for luxury goods or services;  or whether one credit card was being used to pay others.   To make that finding, the court would need additional evidence of what

was purchased and when.   The statutory presumption is in favor of the relief requested by the debtor.   The burden of proof is on the United States Trustee.   In the absence of evidence, the court cannot find that the debts were excessive and beyond the debtors' ability to pay.

Vansickel at 211-212.

In the case at bar, the United States trustee asserts that the Debtor filed her petition as a result of overspending over time and refusing to adjust her cost of living expenditures to reflect the obligation to repay creditors.  As in Vansickel, the United States trustee has presented no evidence in support of this assertion.  There is no evidence concerning the time span over which the Debtors incurred their debts; no evidence concerning their payment patters prior to seeking the advice of counsel (in late 2004); no evidence concerning whether they purchased luxury goods or services;  or whether they used one credit card to pay others.  In the absence of evidence, the court cannot find that the debts were excessive and beyond the Debtors' ability to pay.

*(3) Excessive Budget.*  The third factor concerns whether the Debtors' proposed budget is excessive or unreasonable.  The United States trustee argues that the Debtors' is unreasonable.  The argument is difficult to follow.   The United States trustee asserts that the Debtors cannot maintain their current living expenses because their scheduled expenses are $1,000.00 greater than their scheduled income.  Other than $105.00 for pet expenses, the United States trustee has not challenged the Debtors' budget.   This factor weighs in favor of denying the motion of the United States trustee to dismiss this case.

(4) *The Debtors' Financial Condition.*  The fourth factor concerns whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition.  As noted, the Debtors' listed expenses are accurate.   While the Court

accepted the United States trustee's assertions regarding the Debtors' income, the Debtors' basis for their income, the most recent month's income, and the assertion in their Schedule I that they anticipated a reduction in overtime income in the future leads the court to believe that their schedules were reasonably accurate.

*(5) Bad Faith.* The United States trustee stated that he did not believe that the Debtors had engaged in a behavior that would constitute bad faith, including the continuing contributions to Mr. Simpkins' 401(k) account.[17] To the extent that this factor is relevant it counsels denying the United States trustee's motion to dismiss.

### *III. Conclusion*

The burden of proof is on the United States trustee to prove beyond a preponderance of the evidence that the prosecution of this chapter 7 case would constitute a substantial abuse. Even if the Court accepts the assertions of the United States trustee regarding the Debtor's income, which assertions are somewhat tenuous, the Debtors only have sufficient disposable income to pay five percent of their unsecured claims. This standing alone is not sufficient to dismiss a chapter 7 case.

None of the other factors suggested by the Court in <u>Green</u> counsel dismissal of this case. To the extent that they are relevant, they counsel permitting the Debtor to continue prosecuting this case under chapter 7. The Debtors are not unscrupulous individuals seeking to gain the Court's assistance in a scheme to take unfair advantage of their creditors. It would not be a substantial abuse of the provisions of chapter 7 of the bankruptcy code to permit the Debtors to

---

[17] The United States trustee stated: ". . . I don't think there's any evidence really of bad faith here, Your Honor. I question again the use the continued contribution to the 401K plan, the unwillingness to devote that to a Chapter 13 plan, but I think that really goes more to question of disposable income rather than their overall bad faith." Transcript of Hearing, Page 65, l. 4-9.

continue as debtors under chapter 7.   The motion to dismiss this case shall be denied.

An appropriate order shall issue.

Upon entry of this Memorandum the Clerk shall forward copies to the United States trustee, the chapter 7 trustee, the Debtor and Barrel F. Shader, Esq., counsel for the Debtors.

Entered on this  9th  day of November, 2006.

_____
William E. Anderson
United States Bankruptcy Judge